And we'll start with Anthony Schultz for Burl Cain et al. Thank you, Your Honor. May it please the Court, Anthony Schultz on behalf of the Palace. The District Court in this case granted habeas relief on Petitioner's claim under Batson v. Kentucky. The Court erred in granting that relief. Batson set out a three-step framework for courts to decide if a defendant has established purposeful discrimination in jury selection. In this case, the state courts applied that framework and ruled that Petitioner failed to meet his ultimate burden to prove discriminatory purpose. To overturn that ruling on federal habeas review, Petitioner must show that the state court's ruling was not just wrong, but objectively unreasonable. Petitioner did not and cannot make that showing. Yet the District Court granted habeas relief anyway. The Court did not conclude that the state discriminated based on race and jury selection. Rather, the Court said that the state courts seemingly failed to conduct the final step of Batson. At that step, a court must decide if the defendant has carried his burden of proving purposeful discrimination in light of the party's submissions. Counsel, to be clear, this is an AEDPA case, right? Yes, Your Honor. And so we typically look to the last reason state court decision, and that is the Mississippi Supreme Court decision rejecting the Batson claim on direct appeal? That's correct. Okay. Thank you. At the third step of Batson, a court must decide if a defendant has carried his burden. And in this case, the state courts clearly satisfied that step. They considered the party's submissions before the trial court and ruled that Petitioner failed to make the showing of pretext that was required. That ruling was not just objectively reasonable. Well, your opponent argues that wasn't given a chance to do the pretext. So what is your answer to that? The answer to that, Your Honor, I think is that that rests on an unreasonable view of the transcript. I believe a fair reading of the transcript, any proper reading of the transcript, shows that Petitioner's counsel had the opportunity to make arguments on Batson. They made a Batson objection. They pointed out things like the pattern of strikes. They referred to the argument that the jury was disproportionately white in view of the population of the county. They alluded to the Supreme Court's then-recent decision in Miller, L., and they noted that the trial court must make a determination based on the facts and circumstances. But they did not make any arguments to rebut the showing that the state offered of race and gender reasons as for the four strikes at issue. So I believe that the district court, yes, it said that the state courts appeared to thwart or cut off Petitioner's counsel. I think that is an unreasonable view of the transcript. That is not, certainly not under Edwards' review, but I think under any standard of review that is not what happened. Do you happen to know whether Mr. Pitchford made this thwarting argument on direct appeal to the Mississippi Supreme Court? I believe he has made the argument throughout that the trial court and the Supreme Court in the case did not do the full Batson inquiry. Well, that's different from saying I was prevented from ever making the argument. I don't believe he's ever said that he had other evidence that he wanted to get out at voir dire that he wasn't able to do so. I don't believe that he did that, Your Honor. Yes. So I believe actually the district court's view of the transcript is not only unreasonable, but it's actually internally inconsistent. The court itself said first, as Your Honor referenced Judge Haynes, that the trial judge appeared to full stop and its Batson analysis after deeming the state's reasons race neutral and failed to allow Petitioner the opportunity to rebut. However, the court went on to say that Petitioner then raised his Batson challenge again after that initial exchange when he, as I mentioned, raised things like the population of the county and pointed out that there was only one African American juror on the jury. He had the opportunity to raise arguments. He simply did not make any showings of pretext that was necessary to rebut the state's showing. On direct appeal, did Mr. Pitchford make arguments with respect to why the state's race neutral reasons were pretextual? Yes, I believe so. A lot of the arguments that he's made, he's made now before this court as well. I know that, but my point is that the arguments that he made on direct appeal, and I've read the ones that he's made to us that have to do with sort of this wasn't her brother or wasn't her cousin or all these things, wasn't a drug addict, et cetera, et cetera, et cetera. Were any of those arguments raised at trial? Not at trial, not as reflected in the voir dire trend. And was an objection raised, well, I want to contest these so-called race neutral reasons that I want to show that they're pretextual. The transcript does not reflect that.  No. So just to summarize on that, I believe that the petitioner's counsel had the opportunity to make about an objection. He made the objection, or sorry, she made the objection, simply did not make the showing that was required to rebut the reasons that were off the part of the state. Going back to another holding of the district court, where, as I said in my opening, the district court said that the state trial court, quote, seemingly failed to conduct the third VATS inquiry. And that's at ROA 18053. In our view, seemingly failed to conduct is not even close to the required showing under AEDPA, which requires that there is an error beyond any possibility for fair-minded disagreement that is clearly unreasonable. In fact, the district court itself said in its own opinion, granting relief, that one could certainly argue that the trial court implicitly found that petitioner failed to prove purposeful discrimination, the third VATS inquiry, when it declared there to be no VATS in violation. And that's at ROA 18053. That gives the game away under AEDPA. If fair-minded judges could believe that the state court did the proper analysis that was required, this court, any federal court, is prohibited from giving habeas relief under AEDPA. I would ask the court to compare this case to cases like Ungaga, which we cite in our brief, where this court rejected a VATS claim on direct review, not even under AEDPA review, because the trial judge, quote, performed a third step of the VATS analysis adequately by stating, I don't think the strike was for a suspect reason. Thus, the judge implicitly found that the government strike was not discriminatory. That is exactly similar to what happened in this case. The judge made the required findings under VATS, he rejected the showing of pretext because there really was none made at trial, and he found that the petitioner did not meet his ultimate burden of proof. So even by the district court's own logic, the judge could not have given relief under AEDPA in this case. The district judge also ruled incorrectly that VATS in requires state courts to conduct a comparative juror analysis. The district court said there can be no Remind me what exactly that means. I know the term is used often. What exactly does that refer to in the case law? I believe it refers to comparing stricken jurors against jurors that were accepted onto the panel. You compare their answers. If you said I'm not going to let any teachers on this, but he only threw out teachers of one race and kept the teachers from the other, that would be a problem. That could be an indication of pretext, yes, Your Honor. So it's certainly permissible evidence. It could be evidence of pretext. VATS and challengers often raise it. Courts often do it. However, the district judge in this case on AEDPA review said that there is no question that such an analysis must be completed prior to concluding that VATS has not been violated. And he said, the district judge said, at a bare minimum, the Mississippi Supreme Court should have performed such an analysis and its failure to do so was erroneous. But this court on Bonk held in Chamberlain v. Fisher that there was no U.S. Supreme Court precedent that clearly establishes that state courts must conduct a comparative analysis. So the district court was completely incorrect in its holding that a comparative analysis must have been done, especially where the petitioner never asked for one before the trial court. And in labor cases, including Nelson v. Davis from this court, this court has explicitly held that a state court's failure to conduct a comparative juror analysis is not in itself an unreasonable application of federal law, including where the defendant requested an analysis on direct appeal. So by our view, that completely forecloses the district court's criticism of the state courts in this case for not doing a comparative analysis, either in the trial court or in the state Supreme Court. And in that Nelson case that I just referenced, the defendant, like the defendant here, objected at trial, made a prima facie showing based on the number of strikes, and then failed to make Step 3 arguments on comparable jurors or alleged misrepresentations of the juror's statements during voir dire or otherwise argued pretext. And then on direct appeal, he unsuccessfully attempted to argue pretext. And then before federal habeas courts, argued that the state appellate court unreasonably applied clearly established law because it did not conduct a comparative analysis. And what this court said was, no, under Chamberlain, it is clear that a state court's failure to conduct a comparative juror analysis is not itself an unreasonable application of federal law, and Chamberlain does not limit its holding to where a defendant failed to request such analysis on direct appeal. Do you read the Mississippi Supreme Court's decision as being based primarily on waiver? I don't believe it's primarily based on waiver, Your Honor. I understand why you could read it that way because it applies a traditional rule of appellate litigation that you cannot bring up arguments that you did not fairly present to the trial court, but I also believe that the court went through the showing that Petitioner made, a very weak showing, and rejected it on the merits. I was just looking at the Mississippi Supreme Court cases that are cited at paragraph 29, and those do seem to be waiver. Yes. Meaning you didn't raise the argument. There is Mississippi law that suggests you waive that argument, but the Mississippi Supreme Court, I think, in this case, did more of the traditional, you didn't raise arguments, we're not going to consider them, you fail on the merits. Moving on to another error that we believe the district court committed. The district court said, and this is also 18053 in the record, that there is no authority from the Supreme Court requiring a defendant to rebut race-neutral reasons offered by the state. We, again, believe this is just completely incorrect under this court's law. In cases like Harper v. Lumpkin, Shepard v. Davis, Stephen v. Epps, this court has said time and again that a Batson claim will not succeed where the defendant fails to rebut each of the prosecutor's legitimate reasons. That is also true under Mississippi law, as the Mississippi Supreme Court said in its opinion in this case. In fact, the petitioner himself said below in his summary judgment briefing on Batson that the defense must be afforded the opportunity to present evidence to rebut the explanations offered by the state. So by suggesting that there is no requirement under Supreme Court case law for the defendant to rebut the race-neutral reasons, the district court not only got the law wrong, but it actually inverted the requirement under AEDPA. The issue is not that there is clearly established law requiring the defendant to rebut, though we would argue that Batson itself would require that. The issue is that there is no clearly established law that prevents state courts from requiring them to make the rebuttal. So that is not an appropriate reasoning of relief in this case either. And with this in the background, we would submit that clearly that the showing that the petitioner made at trial and before the state courts does not come close to making a Batson claim under any standard review, but certainly not under AEDPA. Merely pointing to the bare number of strikes and the county's population, questioning the state's motives, alluding to findings of Batson violations in other cases like Millerell is not sufficient to show a violation in this case. I would direct the court's attention to Haynes v. Theroux, which we cite in our briefs. In that case, the state relied heavily on demeanor-based reasons for the strikes, including that particular stricken jurors appeared weak on the death penalty and demeanor, they appeared humorous or not serious, they were leaning towards the defendant and not the prosecution. The defendant in that case attempted to show pretext by arguing that the state struck four of six African-American jurors. There was only one African-American juror on the jury. He argued that the prosecutor had a motive to exclude African-Americans from the jury because the black defendant had killed a white police officer in that case. He argued that the stricken jurors gave answers that were more favorable during voir dire to the prosecution than the defense. And he also pointed to other cases in the same county that previously had found Batson violations. Courts had observed, this is actually Harris County, from a series of cases that African-Americans were routinely excluded from juries. They were rarely part of juries for criminal or capital cases. And what this court said in Haynes was, such factors, even if they can support an inference of discrimination, are not sufficient, individually or together, to show that rejection of the Batson claim by the state courts was objectively reasonable. And we would submit that the circumstantial evidence in that case was much stronger than it was here, and still the court rejected it. Are you aware, you may not be a trial attorney, in sort of the typical run of cases when a defendant wants to rebut the race-neutral reasons given? I mean, is it normal that they say, look, I'm going to need some time to... I don't know. What is the rebuttal case going to be based on? The foregoing voir dire answers or additional voir dire? How does it work? I don't have a ton of experience, Your Honor, with that. My understanding of the cases and looking at the records and cases is that voir dire can move pretty quickly, but often defendants will object to particular reasons. They will ask the court to look into particular reasons. They will ask questions of the stricken jurors. That didn't really happen here. The state presented its reasons. The court considered the evidence before it and determined that the reasons were... Well, I mean, the trial court said, after listening to the reasons, those are race-neutral. Correct. Is that the completion of Step 2? Is that what that is? I think that's actually a completion of Step 3 in this case. Oh. Because the judge not only identified it as a possible reason for excluding a juror, but said, I credit that reason in this case as race-neutral in light of the fact that there is no rebuttal to it. Well, I mean, a reason can be facially race-neutral. It could be, yes. You could say, well, that's race-neutral, and then the other side can say, well, there's more to it than that, right? It's a pretext. That did not happen in this case, but also we would submit that under cases like Ungaga, Perry, and others where this court has said, if a judge confronts the evidence before him and says, this is race-neutral, I find this to be a legitimate reason, that is sufficient for a Step 3 finding. There is no explicit finding requirement. It's actually one of my next points I was going to turn to, Your Honor. So we think, yes, the Step 3 findings were clearly made in this case under this court's precedence, certainly under Edper review. Actually, I can turn to that point now, Your Honor, where Petitioner himself claims in his brief that Batson requires on-the-record findings at Step 3 as to the prosecutor's credibility and discriminatory purpose, but there is no clearly established law showing that. And Edper deference under 2254E1 extends not only to explicit findings of the state courts, but implicit findings as well. And in several cases, this court has rejected arguments, including on direct appeal, that a trial court failed to perform Step 3 or somehow conflated Steps 2 and Step 3 by not making explicit findings. So I think I already referenced the Ungaga case, but there the defendant argued on direct appeal that the trial court erred by failing to make factual findings at Step 3, made no findings to which this court would owe any deference under Batson, and improperly combined Batson's Steps 2 and 3, which is very similar to the arguments that Petitioner offers here. And what this court says was that, no, a trial court does not need to make explicit factual findings at Batson's third step, even in that case when the only race-neutral reason offered was a demeanor-based reason that was not reviewable on the record. In that case, this court said, by hearing arguments from both sides and by stating, I don't think that the strike was for a suspect reason, the trial court necessarily found the government's reason credible. That is exactly what has happened here. Other cases like Haines, which I discussed earlier, Hickens v. Cain, this court has said a trial judge implicitly considered a record before him and credited the reasons offered by the state when he said something as simple as I find that to be race-neutral. And that is exactly what happened here. So at the very least, the court made implicit findings. In fact, they look explicit to me on the record, but certainly they're sufficient under this court's precedence. Okay, what if, I mean, I'm going to make a hypothetical, what if the prosecutor made a completely ridiculous thing like, well, oh no, I banned that person because they were wearing a purple tie. And nothing else was said. Then what? I think it would depend on the rest of the facts and circumstances at issue in the case. Because that is the only piece of evidence. It's actually, it's a non-racial region, so it's legitimate to strike a juror for any reason whatsoever. Well, yeah, but that's pretty ridiculous. So you couldn't say that that would meet Step 3. I mean, if there was nothing to rebut it, it might. In fact, I believe it's Perkett v. Ellum in the Supreme Court where the Supreme Court reversed a circuit court granting habeas because the Step 2 reason was that the jurors had beards. And the court said, it doesn't matter that it's a fantastical reason, that it's not a really strong reason. It was the reason the prosecutor gave and it wasn't rebutted, and it wasn't related to race. And the court overturned habeas in that case and credited the state court's determination, which actually was made without explanation. So I understand, Your Honor, that in a particular case, a facially ridiculous reason that has no basis in the record could be a sign of pretext. And that would, I believe, make it incumbent on the defendant to reject and make a showing that it was pretextual. But standing alone, if that was the only issue, I don't think that fails under Batson because Batson only prohibits striking based on purposeful discrimination on race and gender as well. So, that would be a more difficult case, Your Honor. I agree, but I think there needs to be more done to rebut the reason offered to show that it's actually pretextual. And that wasn't done here. So in that my kind of ridiculous hypo, in that case, would the other side have to say, well, all those guys over there have purple ties and they're getting on the jury? I think you should. I think that would be something clearly a counsel would do. I think probably in that circumstance, a judge would step in too because judges, at the end of the day, trial judges are supposed to be the main guardians under Batson. So I have a hard time thinking that that would get passed, Your Honor. But if it was actually the case that the counsel, for some reason, had an aversion to the color purple, it doesn't violate Batson to strike a juror for that reason. But I would think that a trial judge would not have it. But it doesn't violate Batson. Quickly turning to one other argument that Petitioner makes, which is that he asserts that courts independently under Batson must review all things that potentially bear on the issue of racial animosity regardless of what the defendant shows and argues at trial. That is not what Batson requires, and it's certainly not what Batson clearly requires. As I said earlier, step three requires a court to determine if the defendant has established discrimination. The burden of proof is on the defendant, or the challenger, not just always the defendant, but on the challenger, to prove purposeful discrimination. Merely alluding to statements from Batson or Miller, that the analysis involves the totality of the circumstances, is not sufficient to show clearly established law that the state courts violated. Because what those courts are talking about is the circumstances and the facts that was put before the court. It is not incumbent on the court to do the Batson argument for the defendant. So in a case, which is Ramey, which we cite in our brief, Ramey v. Lumpkin, this court said that there is no clearly established Supreme Court holding that requires a state court to find and resolve all facts and circumstances that may bear on whether a strike was pretextual when those facts were not identified and urged by the strike's challenger. Think about the incentives that was set up. It's something that this court on Bach and Chamberlain warned about. The incentive for sandbagging that it would create if you can say to a defendant, no, you can stay silent and rely on the judge to make the argument for you, and if he doesn't, on appeal, you can bring up all your arguments and you can argue that the state cannot defend itself anymore, because it's stuck with the reasons it gave below, and you can argue that the state courts erred by not making the Batson showing for you and basically get a habeas get-out-of-jail-free card. That is not how Batson works. It would violate the principle of party presentation, it violates the principle that Batson permits prompt rulings on preemptory challenges at the trial court, and it simply just violates what step three requires, which is determining whether the defendant made his required showing. I can turn briefly to Remedy, Your Honor, if there's no questions further about the merits. Even if the district court's ruling of error in this case were correct, the remedy it ordered, which is conditional release based on retrial, is not tailored to the violation that the court found and is entirely improper, both under AEDPA itself and also under traditional equitable principles. The district court did not rule that the state exercised preemptory strikes in a discriminatory way. It ruled only that the state courts failed to conduct step three of Batson. If this court were to credit that finding, the error can be corrected short of retrial. It simply can be instructed for the state courts to do a step three analysis to consider the arguments that was before it based on the trial court record and make an ultimate determination. We, of course, believe they already did that, and this court should defer to that determination. If there were error, it simply can be corrected without retrial. Ordering retrial would, as I said earlier, violate AEDPA and principles of equity. As the Supreme Court has said in numerous cases, equitable remedies, which habeas clearly is, must be limited to the inadequacy that produced the underlying injury. Do you have a case where a remedy of that nature is ordered? Yes. We cited two cases in our brief, Jones v. West out of the Second Circuit and Coulter v. Gilmore out of the Seventh Circuit. I think, actually, the best case on this point, Your Honor, is actually Batson itself. In Batson, the court determined that the trial judge failed to require the prosecutor to offer reasonable reasons for the strikes, and it didn't overturn the conviction. It sent it back down to make that determination, and it says that if the state cannot offer legitimate reasonable reasons, or if the defendant fails to rebut it, or succeeds in rebutting it, then the conviction must be overturned. We agree that an actual Batson violation can be a structural error if a juror was actually discriminated against based on race and was excluded from a jury, then yes, that is a structural error. But not performing the full process is not a structural error requiring a conviction to be overturned. Does a prosecutor's history, past years of race-based peremptory strikes factor into our analysis at all? Your Honor, it can, in a particular case. The Supreme Court in Flowers, for example, has suggested that a defendant can rely on the history of his particular case as well as other cases, but Flowers did not change the normal rule under Batson that is up to the defendant to make that argument, Your Honor. That was not done here. When did Flowers, and when was Flowers, that whole saga introduced into this case? I believe the timeline, Your Honor, was the first time a Batson violation was found by the state court in Flowers was after the defendant's conviction. Oh, I know, yeah. I mean, the whole issue of Flowers, when did that become an issue in this case? I believe the petitioner here raised it on direct appeal because at that point the Supreme Court of Mississippi had found a Batson violation in one of the multiple iterations of Flowers. I think it was Flowers 3 at that point. So it was raised at that point, Your Honor. I see that I'm almost out of time. Okay. Thank you. You saved time for me. I think it's 30 minutes. I believe so, yeah. Your Honor, thank you. Okay. Yes. Perkovich for Pitchford. Mr. Pitchford, correct. I think it would be useful to focus on this question of rebuttal to begin with. A lot is made of it. Obviously, the state Supreme Court's decision hinges on a forfeiture analysis under state law. State law that predates the Miller-Ell decision of the Supreme Court, the second one, in 2005, which makes very clear that forfeiture has no bearing on the proper appellate analysis that a state Supreme Court must make when it's presented, at a minimum, when it's presented with pretext arguments. The problem is the pretext arguments were not presented at trial. Right. And in Miller-Ell that was true. In Snyder that was true. In Flowers that was true. And the whole line of Supreme Court cases on this that are controlling Are you saying you can't waive a Batson challenge? The challenge, there's no question that the challenge was properly presented. The prima facie analysis in the step one inquiry here, even the state Supreme Court recognizes was satisfactory. The step two analysis, there isn't controversy on that. In fact, that's all we have. The record reflects race neutral, race neutral, race neutral. Let's move on and pick this period. Just take one of the witnesses. One of the witnesses, as I recall, your pretext showing is what was one of them. It wasn't no, I should have just take one. He wasn't the brother, he was the cousin, something like that. Now, if you don't make that argument to the trial judge, how can you argue on appeal that it's reversible error not to find that that race neutral reason was pretextual. Here's the analysis that the Supreme Court has set down, the United States Supreme Court, to be clear, as opposed to the Mississippi jurisprudence on this. The challenge really stands or falls, and that's the language of Souter and Miller-El, on first, the proffer in step two from the state, the prosecution. The ostensibly race neutral reasons. Secondly, reckoning with the voir dire record. In every case we're looking at from Miller-El forward is very clear that the analysis is a function of that state record, that plain state record that's before that trial court. You think the trial court has to do it sua sponte? It has to make determinations. You think the trial court has to do it sua sponte, and Brady and its progeny clearly established that. That is the third step. Since Hernandez versus New York, those factual determinations. What case established that a trial judge has to sua sponte consider all the evidence in the voir dire as to whether a preferred race neutral reason is in fact not a real reason but pretext? Miller-El makes that very clear. Miller-El says that. I think perhaps the way to answer this question is to look at Justice Thomas' dissents. I think it's worth sitting on this for a minute because the forfeiture arguments in Justice Thomas' dissents from Miller-El forward decry the fact that forfeiture is not recognized by the jurisprudence of his court. He's railing against that as late as flowers. There's no question about that. He would not be spending thousands of words in dissents if it were the case that one can forfeit these arguments at the trial level. In fact, the jurisprudence of this court identifies, I believe, two cases where that pretext analysis was actually put forward by trial counsel. When this occurs is on appeal, and it occurred in this case on appeal. There's no question in our record that the comparative analysis... But wasn't Miller-El about whether having any person of the race on the jury kind of undoes any notion of Batson? That's part of it. Wasn't that the main point of it? That just because one person of race X is on the jury doesn't mean you didn't discriminate against all those other people from race X that you threw out? Respectfully, that's an important part of it, but I would say it's far from the key element of this. The back and forth, I think, between Justice Souter and Justice Thomas is pivotal in our understanding of the totality of this jurisprudence. It's the totality of circumstances that is very firmly established in Miller-El. We have an en banc opinion that says a judge does not have to correspond to do a comparative juror analysis. Correct. So that's wrong in light of Miller-El? That's correct. Let's look at Chamberlain's case history because that's decisive here. You have a district court decision from the Southern District of Mississippi that said, sua sponte, a state court has to conduct this  That's what Chamberlain en banc shuts down. We are not arguing that. Is that consistent with what you just said about Miller-El? That it's up to the trial judge to sua sponte, look at the voir dire, and to figure out whether to leave. Let me clarify. It is clear that the fact determinations in that third step must be made no matter what by the trial court. How about implicitly? They can. Okay. Why weren't they implicitly made here then? Our judge, and I refer to Judge Mills, the district judge, considered that, and he said arguably, one could say this is implicitly decided. Well, if it's arguable, then it doesn't meet up. No, Your Honor. Respectfully, he made fact findings. They have to be clearly erroneous for this court to reverse his fact findings under D-2. Who made fact findings? The district court? Mills? Based on what? On the decision before him. He didn't make fact findings. He didn't have an evidentiary hearing and make fact findings. He's just looking at the same cold record that we're looking at. He made factual determinations under 2254 D-2. What fact findings? That there was no third step conducted by the state courts. Just based on him looking at the cold record. That's what they do. Huge restriction on federal courts making fact findings of state habeas cases as opposed to federal habeas. Your Honor, let me refine my articulation of this. I'm talking about the D-2 analysis that the district court and this court must conduct. Under D-2, Judge Mills found there was no finding. Not an implicit finding, not an explicit finding. There was no finding as is required in the third Batson step. That's his finding. For this court to undo that, you would have to determine that Judge Mills was clearly erroneous. That's a clear standard of review both sides agree on. It's in the papers. I submit to you the D-2 determination he made is subject to clearly erroneous as far as your review goes. There are two aspects to this. Isn't D-2 about an unreasonable determination of facts in light of the state court record? Isn't that what D-2 says? Yes, Your Honor. That's where the federal district judge says look, I looked at what the state courts did. That's based on an unreasonable determination of facts in light of the state court record. Is that what you're saying that he said? He said two things. He's ruled both on D-2 and D-1. With respect to D-2 he found there was no third step under Batson as is required and that as Hernandez on forward has made clear is a pure issue of fact. So he concluded looking at the state court record there was no third step determination made. Full stop by any of the state courts. And I direct you to page 227 of the state supreme court's opinion paragraph 28 footnote 16 or 29 footnote 16. That's the analysis there. What they do is they sidestep any third step analysis under Batson and they say this was forfeited because trial counsel didn't raise it. However, Miller-El which precedes this case makes it very clear the majority in Miller-El articulates that two things have to occur. The trial judge when it gets to that third step must reconcile the voir dire record with the proffer from the state from the prosecution's race neutral reasons and make determinations. That's what Snyder gets at. Justice Alito is abundantly clear about that. Two strikes were before the court. They ruled on one of the strikes saying it's not enough just to say race neutral, let's move on. You have to make a determination as to credibility based on the proffer from the prosecution and didn't pass muster for Justice Alito and Snyder and I submit the four strikes here are more problematic. I don't want to get ahead of us. Just pick out one example from one of the four structures where the race neutral reason is pretextual. The point, Your Honor, is no determination was made. That's the breakdown in this process which Judge Mills identifies very astutely. I know you briefed this. You briefed why the reasons given by the state were pretextual as to the four jurors. Am I correct? You are correct and the reason why that's put forward is to say this was not a make-weight argument. In other words, the pretext question was a very, very serious question. We're not trying to get over on technicality. What we're pointing to and what Judge Mills correctly identified is a failure of the state court process. The arguments that you make in your brief to us were never ever made, even made to the trial court. And again, since Miller L. Forward You don't have to. You just don't have to make the argument. At the trial court? No, you do not. You don't have to make the argument. No, you do not, Your Honor. I counsel you to look at Snyder. You can say, you know what? That's pretextual. And the trial court can look at you and say, why? And you say, I don't know. I'm not going to tell you. And then on appeal, you can try to argue it. The appellate court says you didn't even make that argument below, so you lose and you're saying that violates clearly the established law. I think what brings us to light is the dissent in Snyder from Justice Thomas, where he complains that Justice Alito's decision is a product of the briefing in the Supreme Court and had not been raised at any point prior. Okay. Right. Again, and perhaps this is counterintuitive. I didn't make the law. I'm just trying to have everybody abide by it. There are two things that have to happen at trial. Well, there's three things. Let's start with the first step, which is the prima facie showing. There's no question that was made here with the four stricken juries, or veneer members. Then, it's this reckoning by the trial court with the voir dire record and the proffers for each of those. Whose burden is it to show that the state's proffered, race neutral reason is pretextual? It is the defendant's. It's interesting, when we look at Snyder again, Justice Alito contemplates whether that burden shift that happens in step two, where the burden is then placed on the prosecution, whether that should persist forward. And what I think Justice Alito's noting there is that the reality of the matter here is that the actual workings of Basson dictate determination in step three by the trial court saying, okay, here is the reasons that were put forward on this juror, that juror, the next one. Here's the record. I see where there is a reason put forward that a person was wearing a purple hat, and I struck her for that reason. Yet, during voir dire, we see questioning about the color of hats and we see white jurors with purple hats getting on the jury. Okay, but Snyder was direct review. That's correct. Not a federal habeas of the state court. That's correct, Your Honor. That's a little different. It's different in terms of how we're judging the, you know, review of the decision from Judge Mills, but that is the inquiry we're conducting here. It's Batson, right? So our analysis under Batson is, is Judge Mills wrong? Yeah, but the AEDPA is not in play in a direct appeal. Right, but it's... And you can go direct from the Mississippi Supreme Court or wherever to the U.S. Supreme Court, but you can't do a direct appeal from the Mississippi Supreme Court to the Fifth Circuit. Not today, at least, Your Honor. Well, not ever. So the bottom line is that's a different animal to me than you did your direct appeal to the Mississippi Supreme Court, lost, did your habeas, and now you're in federal court for habeas where AEDPA applies. Whatever we rule on this, if it went up to the Supreme Court after we're done, they would need to apply AEDPA. They would. That would be different from had they taken the Mississippi Supreme Court direct appeal and reviewed it. Right, and what we have is a district court reversing the conviction on questions of fact and questions of law, and I've neglected the questions of law, the D1 analysis here, which is important. Okay. Right, because we have the fact finding determination under D2 that says no third step was conducted. So that has two implications with respect to the D1 analysis. The first, clearly, is that Batson requires three steps. The third step did not happen. That's a violation of Batson and every other case in that line. The second is, contrary to Miller L., which for the reasons I perhaps have belabored for the court, the trial court's inquiry about the proffers of race-neutral reasons by the state for the strikes and the voir dire record before that court at that time, the failure to find those determinations was not considered by the state Supreme Court. Rather, the state Supreme Court applied its Mississippi Batson jurisprudence, which isn't a thing, because this is federal law, and relied on this forfeiture argument that, again, is totally consistent with Justice Thomas' analysis, which is not the law. He's dissenting every single time in these Batson cases, saying forfeiture should be the order of the day. It is simply not. There's no question about that. Yet, that is what the state Supreme Court did on direct review here. Here, this idea that trial counsel failed to rebut, first of all, she was foreclosed from rebutting on this record. And that's the driver of Judge Mills' decision. But, at the end of the day, the Supreme Court... You're saying, if she had said, you know, Your Honor, I think that race-neutral reason that you just accepted is pretextual, and I'd like to tell you why. She couldn't have done that? She probably could have. So she's not foreclosed? I think it's actually helpful to look at the transcript here, because language... Again, this is in the flotsam and jetsam of the trial process. She raises and makes the prima facie showing for the four strikes. Then, in very short sequence, and again, I mean, it's just 12 pages of transcript, and it's submitted before you in the briefing. The judge says, race-neutral, race-neutral, race-neutral, and here's the last one. The court finds that to be race-neutral as well. So now we will go back and have the defense starting at 37. And they pick the rest of the jury. So, as I said, or we said in our briefs... So would it be different if the court had said race-neutral? Do you have any objection, counsel? That would be different. That would be different. That makes all the difference. That would be different with respect to the state Supreme Court's analysis, but at the end of the day, not for the federal analysis. I will tell you, having been a state district judge, although it was for civil cases, lawyers will scream out if they have something to say, even if I'm moving on. And the question is, does the judge say, no, you're not allowed to say anything? That's a different animal from the judge not thinking of every single thing they might want to cover, and the lawyer says, I want to address this. As long as the judge just kind of sits there and lets you address it, that's fine. As a lawyer, I had a judge tell me I had to shut up. That's a little different than I acted as a judge, which was allowing people to make the arguments they need to make and let's move on. So the notion that by moving on as a judge you are banning all arguments, including arguments you didn't know they wanted to make, I'm sorry, but I'm struggling a little with that concept. Yeah, and I'm not making that argument. Again, do I wish that trial counsel had more forcefully advanced rebuttal arguments? Yes, because we probably wouldn't be here. This whole case would have proceeded differently. But I thought you said it doesn't matter. It doesn't matter under the Batson analysis. They cannot raise any of the rebuttal arguments to the race-neutral reason and yet prevail on appeal. I urge the court to review Is that your argument? That's the law. That is the law. Because again, what puts that into stark relief here are all these dissents from Thomas making that argument on the losing side. As I've said, the analysis under Batson flows from that third step that was not taken. And that third step is the reckoning of the race-neutral proffers that is the lowest bar possible to get to that third step. It borders on wearing a purple tie. It's that frivolous. Yeah, but these aren't like that. They're not. These are legitimate reasons. They're actually, you know what? He was convicted of manslaughter. He had a brother convicted of manslaughter. I don't want people on the jury whose family members have been convicted. Is this not purple ties? I'm not saying they're illegitimate. This is a very savvy profferer of race-neutral reasons. This is a man who's perhaps proffered more race-neutral reasons for striking black veneer members than anybody in the history of Batson. So these are very good proffers. The point is that the inquiry that needed to happen never happened. The trial court did not do its job. And its job was take those proffers and apply them to the voir dire record and make determinations. They could be very simple. That's your... That is Batson's inquiry. It is not contingent on the rebuttal. And again, I think the fullest debate of this is Miller 2, Miller L2, between Souter and Thomas. I counsel the court to look at that closely because that bears this out. And as late as flowers, Thomas is still insisting that forfeiture become the order of that court. And it's just not. And again, it is a counterintuitive analysis. I recognize that. The point is that the second step in terms of that proffer is a very low bar. Then it's incumbent on, because the defense has made its burden by the prima facie showing to trigger all this, then it's incumbent on the trial court to make determinations. It doesn't have to be a Russian novel. It just has to be an articulation of reckoning the reason with the record before that court. The trial court has to do it sua sponte and they cannot be implicit. No. We're not arguing that it cannot be implicit. It's certainly poor form to do that. It makes everybody's job harder downstream. This court has recognized that implicit findings can be made. Now the Third Circuit sees that differently. So there's a difference of opinion on that. But I'm not arguing that this cannot be done implicitly. What I am arguing is that Judge Mills correctly weighed whether this was implicit and determined that no. It wasn't explicit. It wasn't implicit. There was no finding. The trial judge was obviously observing the entire voir dire. And the demeanor of the struck veneer persons.  he was there. He saw it all. And when he says that's a race-neutral reason, he's making a ruling. I mean he was there for the Sixth Flowers trial as well. So the problem is that Judge Loper did not do the basic inquiry he needed to do. And that's how this all fell apart. It's as simple as that. It's an extraordinary record. You don't see even a failure of an implicit, an arguably implicit finding in that third step. There just aren't cases on that. And again, as we say in our brief, at the beginning of this, when the most facious showing is made by defense counsel, the judge is stumbling around. What do I do? And in fact, the prosecutor starts it with, do you want me to make race-neutral reasons for striking the white jurors? Because he's confused by the court's instruction. The court just lost the plot. It's as simple as that. And this broke down and the jurors' prudence again, since Miller L was very, very clear. And I appreciate the difference in posture in terms of the Supreme Court taking a case on direct review from a state Supreme Court. But what I'm focusing on is a proper Batson analysis. Of course, when we shift to the Edpa analysis on top of that, I recognize that the difference is very, very substantial. Again, I've talked about the D2 analysis, the D1 analysis. Also, I just want to be clear what the state Supreme Court did instead of the Batson analysis was adopt a forfeiture analysis to decide this and to not make any determinations about the third step, about the intent of the prosecutor. And that's just not the inquiry under federal law. Okay. Your opponent says, if we ended up with a new trial, the thing to do is send it back to the courts in Mississippi to make that analysis, not to send it back for a new trial. What's your response to that?  the district court made the standard form of judgment here. It reversed because he found that the third step was violated as a matter of D2 and D1. And when one does that, a conditional release is ordered. That's what he did. So this court reviews that for an abusive discretion standard as set forth in Woodfox. Well, but it's a legal question of whether a new trial is appropriate in this situation. And I know it's hard for you to imagine this, but we can decide that over the district court. Oh, I fully can imagine that. Believe me. No, that's true that the state is advocating for a unique remedy here. It has no authority in the Fifth Circuit in nearly 40 years of Batson or other things. So you had to reach out to other circuits to argue that this should go back for a fact determination 20 years after the trial by the trial court. If the court were to determine that it's not automatic reversal as any Batson violation dictates, then there's a couple ways to handle that. But I do want to focus on the fact that this is a structural error here. And Batson is not the most onerous standard. Perhaps that's the greatest understatement I've submitted to a court. This court in almost 40 years of Batson has found two Batson violations. It is rarely imposed. And Justice Powell in Batson put forward the three steps. That's the inquiry. If a state court fails to conduct those three steps properly, then the Equal Protection Clause is enforced by reversal. That's always been the case that applies here. And it's because it's structural error. Now, should this court determine that the violation of the Equal Protection Clause here requires reconsideration or revisiting of the third step that never happened, the district court can conduct that. And I would point to... Mr. Smith is helpful on this. It's a 2013 decision, Judge Jolly of this court. And there, what we had in the Middle District of Louisiana is a... The defendant himself spoke up. Mr. Smith said, hey, it seems like they're striking these jurors because they're black. And the trial court ignored that, the state trial court. And then in Habeas, the district court concluded that actually the prima facie showing of Batson was made. That first step was made. And so this whole process broke down. What the Habeas court did is because all this was no fault of the petitioner, under 2254E2, the district court had an evidentiary hearing. And so they handled Step 2 and Step 3. So here, Step 3 could be handled by the district court. It makes more sense than sending it to the state courts to revisit something they've already failed at. In other words, what we've got is a district court judging violation of Batson because of the failure on that third step. That determination is properly made under D1 and D2. And so, if that's not deemed a cause for automatic reversal because of structural error, then the district court can dispose of the inquiry in that third step. Alright, anything more you want to say? There's a lot there. We're making two D2 arguments contrary to unreasonable application, contrary to Miller et al. unreasonable application of Batson on this third step inquiry. D1 analysis in terms of the failure of the fact-finding. And again, what we just finished with respect to the remedy here. Unless the court has further questions, I'll step down. Alright, thank you. Just a few points to respond to. First, I wanted to respond to my friend who said that we agree that the review of the district court's findings are clearly erroneous. The district court made no factual findings. In fact, at page 10856 of the record on appeal, the district court said, I made no findings as to whether I agree with then-Justice Graves' dissent. He made no factual findings in this case. There is nothing for this court to defer to at the district court level in terms of factual findings. The only way to understand the district court's decision here is as a D1 legal decision, which is reviewed denotable by this court. I want to address briefly the issue of forfeiture. In numerous cases, this court has said that you can forfeit in Batson. I would point the court's attention to Harper v. Lumpkin, which is 64 F. 484, as well as Stevens v. Epps, that's 618 F. 3489, where this court said failure to present issues to the state courts can result in waiver, including in Batson cases. On the explicit versus... Oh, we're told that Miller L. dispenses with that principle. So, Justice Thomas' dissents are not the law, Your Honor. In the majority pending the Miller L., the court stressed, and this is at page 241, footnote 2, state court fact-finding must be assessed in light of the evidence presented in the state court proceedings. It stressed that evidence must be presented to the state courts to be considered by federal courts in habeas. In Miller L. 1, the court stressed that the petitioner in that case presented extensive evidence in support of his motion at a pre-trial hearing, and also at a post-trial hearing held after Batson. Miller L., the trial, the first trial in Miller L. was conducted before Batson was actually decided. So it was done under the Swain standard that was then the law under the Supreme Court's precedence. But then after Batson was decided, they conducted a Batson hearing because of the unique posture of that case. But the majority in Miller L. 2 stressed that the evidence on which Miller L. bases his arguments and on which the court based its results was recorded in the transcript of Wadir and was before the state courts. Miller L. certainly did not establish that it is not the defendant's obligation to make a Batson showing at trial court. The whole premise of the Batson framework is that it is made at the trial court that the steps are done by that judge who appellate courts owe deference to. So I respectfully disagree that Miller L. somehow said that you do not have to make an argument before the trial judge. Briefly, on the explicit versus implicit argument that I discussed briefly before, it is clear under this court's precedence that implicit findings at Step 3 are sufficient, both under direct review and, of course, under habeas as well. In fact, in the Haines case that I discussed during my opening remarks, the court said that there is no clearly established Supreme Court case law that requires a trial judge to say more than quote, it's race neutral. That is exactly what happened in this case. It is clear that the... And my friend said that he agrees implicit findings are proper. I'm not sure what an implicit finding would be at Step 3 if it's not what happened in this case, at the very least. And then again, on remedy, I would say... Well, what about your opponent's argument that the question of whether it was an implicit finding was a fact question that we have to defer to the district court on? What's your response to that? I don't believe that is a fact question, Your Honor. I think what the district court did below was say that the state courts did not properly apply the Batson framework, which sounds to me like an unreasonable application of the law under D-1. I don't see how that could be a fact finding by a district court. Typically, Batson cases are often under D-2 because... I just think we're conflating all sorts of different things. A D-2 finding is that the state courts made an unreasonable finding in light of the evidence. That's not being argued here as far as I can tell. That the district court made a fact finding would be after an evidentiary hearing, which would be that's a different animal. Yes. There was no fact finding by the district court in this case, Your Honor. Though the district court cited both D-1 and D-2 in its opinion in terms of giving relief, he never actually explained what factual determination by the state courts was unreasonable. He walked through briefly the four jurors that issued... If the idea that a forfeiture finding... Let's assume that footnote 16 in the Mississippi Supreme Court decision is about waiver forfeiture. If the idea that that violates clearly established law, that's also not a fact finding. Correct. That's a legal finding. It may be right, it may be wrong, but it's not fact. And there is certainly no clearly established Supreme Court law that suggests that you cannot waive in Batson whatsoever. I am out of time. There's no further questions, Your Honor. We ask that you reverse and render on the Batson claim in this case. Thank you. Thank you for your CJA service. Thank you for your service as well. And this case is now under submission, and we appreciate both sides' arguments, and we are adjourned.